# Exhibit A

**Gawthrop Greenwood, PC**

By:     George C. Zumbano
            Pa. Supreme Court No. 21295

By:     John E. D. Larkin
            Pa. Supreme Court No. 307270

17 East Gay Street
West Chester, PA 19381

p.      610.696.8225
f.      610.696.7111

*Attorneys for Spa*

*Filed and Attested by*
*PROTHONOTARY*
06 Apr 2017 03:09 PM
K. Hume

| | |
|---|---|
| SPA DOGS, LLC<br>350 East Biddle Street<br>West Chester, PA 19380<br><br>      *Plaintiff/Petitoner,*<br>      v.<br><br>MASSAGE ENVY FRANCHISING, LLC<br>14350 North 87th Street<br>Suite 200<br>Scottsdale, AZ 85260<br><br>      *Defendant/Respondent* | IN THE COURT OF COMMON PLEAS<br>CHESTER COUNTY, PENNSYLVANIA<br><br><br><br>Declaratory Judgment Action<br><br><br><br><br>Case No: 2017-03617-CT |

## EMERGENCY EX PARTE PETITION FOR INJUNCTIVE RELIEF

Plaintiff/Petitioner, Spa Dogs, LLC, ("Spa Dogs") through its attorney, Gawthrop Greenwood, PC, hereby petitions this Court for an emergency *ex parte* injunction pursuant to Pa.R.Civ.P. 1531(a) and, in support thereof, avers as follows:

### PARTIES

1.      Plaintiff is Spa Dogs, a Pennsylvania limited liability company, with a principal place of business at the above-captioned address.

2.      Defendant is Massage Envy, an Arizona corporation with its principal place of business at the above-captioned address.

*JURISDICTION & VENUE*

3.      The Courts of Common Pleas have *in personam* jurisdiction over the defendant pursuant to 42 Pa.C.S. § 5301(a)(2) because Massage Envy carries on a continuous and systematic part of its general business in Pennsylvania.

4.      The Courts of Common Pleas have subject matter jurisdiction over this matter pursuant to 42 Pa.C.S. § 931, which vests this Court with "unlimited original jurisdiction of all actions and proceedings" not otherwise provided for by law.

5.      Venue is appropriate in the Court of Common Pleas of Chester County pursuant to Pa.R.Civ.P. 2179(a)(2)-(4), because Chester County is a county where:

      a.      Massage Envy regularly conducts business, having established multiple franchises in Chester County, including plaintiff's franchise;

      b.      the cause of action arose, inasmuch as this action relates to the termination of plaintiff's Chester County franchise; and

      c.      the transaction or occurrence took place out of which the cause of action arose, inasmuch as Massage Envy has (wrongly) alleged that Spa Dogs' default under the Franchise Agreement took place in Chester County.

*FACTUAL ALLEGATIONS*

6.      Spa Dogs is a Chester County Massage Clinic.

7.      Spa Dogs is a franchisee of Massage Envy, and operates under the name "Massage Envy West Chester."

8.      Massage Envy's business model allows clients to purchase individual massages or treatments, but encourages clients to purchase memberships instead.

9.      Memberships cost a monthly fee that is directly debited from a client's bank account.

10.     Massage Envy and its franchises receive a benefit of guaranteed monthly income when clients enter into membership agreements.

11.     Clients receive discounted massages as part of their membership agreement, which can been received at multiple Massage Envy franchises.

12.     In the normal course of business, Spa Dogs must hire trained and licensed massage therapists to perform massage for its customers.

13.     Spa Dogs' relationship with Massage Envy, its franchisor, is governed by a Franchise Agreement, originally executed by Massage Envy and Rick O'Brien on March 21, 2007, and assigned to Kate Diffenderfer ("Diffenderfer") and Spa Dogs on or about May 17, 2011 ("Franchise Agreement") (attached at Exhibit "A").

*THE HANRAHAN INCIDENT*

14.     In September of 2013, Spa Dogs employed a licensed massage therapist named John Hanrahan.

15.     On or about September 26, 2013, Lynn Weston, a client of Hanrahan's, contacted Spa Dogs and complained that Hanrahan had kissed her during a massage.

16.     When questioned, Hanrahan claimed that it was possible his face had grazed the client's cheek, but that he had not intended to kiss her.

*2017-03617-CT*

17.     As a result of this admission, Spa Dogs terminated Hanrahan on September 27, 2013.

18.     Spa Dogs reported the complaint, the substance of its investigation, and Hanrahan's termination to Donald McConnell, who serves as the regional developer for Massage Envy, and acts as a go-between for Massage Envy and local franchises like Spa Dogs.

19.     McConnell forwarded that information directly to Melanie Hanson, Massage Envy's general counsel.  (E-mail correspondence, Sep. 27, 2013, attached at Exhibit "B").

20.     Massage Envy did not take any action as a result of the report.

### *THE DEITER INCIDENTS*

21.     On or about March 17, 2014, Spa Dogs hired James Deiter to perform services as a licensed massage therapist.

22.     Prior to hiring Deiter, Spa Dogs performed a routine background check, and learned that:

a.      Deiter was licensed by the Commonwealth of Pennsylvania to provide Massage Services;

b.      Deiter had never previously been charged or convicted with a crime; and

c.      Deiter had received training as a massage therapist, and had prior work experience as a massage therapist.

4

23.     During his employment with Spa Dogs, Deiter received overwhelmingly positive reviews from customers.

24.     For instance, Massage Envy maintains a customer feedback system called "ME SPA Listens" in which Deiter achieved a score of 93.2-out-of-100.

25.     Deiter also received positive feedback from colleagues at Spa Dogs when he worked with them in training sessions.

26.     For instance, in one such session, Deiter received comments from Ralph Amaro, Kathleen Blaine, Amanda Devaney, Alison Walter, Patty Welsh, and Kate Diffenderfer, all of which were overwhelmingly positive.

27.     Amanda Devaney, in particular, wrote "very relaxing w/ excellent technique!  Checked in w/ me and addressed my concerns!"

28.     During his employment with Spa Dogs, Deiter also continued to keep up with continuing education related to massage therapy:

    a.      In March of 2014 he completed a course through "Massage Envy University" called the "Deep Muscle Therapy Online Certification."

    b.      In the same month he completed a course through "Massage Envy University" called the "AromaTherapy Online Certification."

    c.      In the same month he completed a course through "Massage Envy University" called the "Sugar Foot Scrub – Massage Therapist Online Certification."

    d.      In the same month he completed a course through "Massage Envy University" called the "Draping Online Certification."

e.      In November of 2014 he again completed the "Draping Online Certification."

f.      In June of 2014 he completed a course entitled "Behind Closed Doors: Massage for the 21st Century."

g.      In August of 2014 he completed a Massage Envy Hot Stone Therapy Course.

h.      In October of 2014 he completed a course through a third-party training service called "Prenatal Massage 12 Continuing Education Hours."

29.      Deiter also had good personal relationships with his colleagues.

30.      For instance, Deiter regularly performed massages for Kate Diffenderfer, who is the sole member of Spa Dogs.

31.      Diffenderfer referred her mother to Deiter, who also received massages from him.

32.      Deiter regularly asked his colleagues, including Diffenderfer, if they would be willing to accompany him to church, which he represented to be a significant part of his life.

33.      Deiter represented to his employer that, in lieu of personal vacations, he generally took part in mission trips, most recently to Haiti, where he performed work with his church for those in need.

*The Angelini Report*

34.     On February 6, 2015, a sometime client of Deiter's named Sylvia Angelini called Spa Dogs and complained that Deiter "touched [her] inappropriately" on November 26, 2014, two-and-a-half months earlier.

35.     In order to investigate Ms. Angelini's claim, Spa Dogs asked that she return to the franchise's location for an in-person interview on February 12, 2015; Angelini agreed.

36.     Spa Dogs interviewed Deiter, who denied Angelini's claim.

37.     In spite of Deiter's denial, Spa Dogs immediately suspended Deiter pending an investigation into Angelini's complaint.

38.     Spa Dogs reported Angelini's complaint to Massage Envy on the day it was received.  (Angelini Report, Feb. 6, 2015, attached at Exhibit "C").

39.     Angelini failed to appear for an in-person interview as she had promised, and did not return calls seeking additional information.

40.     Massage Envy did not take any action as a result of Spa Dogs' report.

41.     Upon review, it was Spa Dogs' judgment at the time that Ms. Angelini's complaint lacked indicia of credibility, including but not limited to:

         a.     Angelini wished to terminate her membership early, which termination was not permitted by the terms of the membership agreement absent cause.  Thus, she had a clear motive to lie;

7

b.     Although she claimed to have been touched inappropriately, Angelini did not articulate how or where that inappropriate touch had occurred;

c.     Although she claimed to have been touched inappropriately, Spa Dogs' records did not indicate that Angelini terminated the massage early;

d.     Although she claimed to have been touched inappropriately, Angelini did not report the incident for more than two months;

e.     Although she agreed to return for an in-person interview to give a more detailed statement, she declined to do so once her membership was canceled, and refused to return calls asking that she reschedule an interview; and

f.     Deiter had a long track-record of positive interaction with clients and colleagues, as well as a strong educational background, and denied the charge.

42.     Accordingly, Deiter was allowed to return to work.

43.     Massage Envy took no action to inquire as to the outcome of the investigation or Mr. Deiter's employment status.

### *The Chiofolo Report*

44.     On April 8, 2015, a sometime client of Deiter's named Dawn Chiofolo called Spa Dogs and complained that "she had a bad experience" with Deiter on November 14, 2014, and that she no longer wanted to be a member.

45.     In order to investigate Ms. Chiofolo's claim, Spa Dogs asked that she return to the franchise's location for an in-person interview, which she refused to do.

*2017-03617-CT*

46.     Spa Dogs interviewed Deiter, who denied Ms. Chiofolo's claim.

47.     Upon review, it was Spa Dogs' judgment at the time that Ms. Chiofolo's complaint lacked indicia of credibility, including but not limited to:

a.      Chiofolo wished to terminate her membership early, which termination was not permitted by the terms of the membership agreement absent cause; thus, she had a clear motive to lie;

b.      Chiofolo waited four-and-a-half months to report the incident;

c.      Chiofolo refused to specifically state what had occurred, and only told Spa Dogs that Deiter "may" have touched her breasts;

d.      Although she claimed to have been touched inappropriately, Spa Dogs' records did not indicate that Chiofolo terminated the massage early;

e.      In the same conversation, Chiofolo reported complaints about an unrelated Massage Envy franchise in Exton, Pennsylvania;

f.      Ms. Chiofolo has a history of unrelated complaints, which Spa Dogs viewed as attempts to obtain free services or early termination;

g.      Chiofolo refused to discuss the matter in-person altogether; and

h.      As noted above, Deiter had a long track-record of positive interaction with clients and colleagues, as well as a strong educational background, and denied the charge.

48.     Because Deiter denied Chiofolo's claim, and because Chiofolo refused to participate in an investigation or provide any substantiating details, and as a result of

the lack of indicia of credibility in her report, Deiter was not suspended, and was allowed to continue as an employee.

### *The Weideman Report*

49.     On May 2, 2015, a sometime client of Deiter's named Susan Weideman called Spa Dogs and made a detailed complaint alleging Deiter's misconduct during her massage, which had occurred earlier that day.

50.     During the call, Weideman was audibly crying and obviously upset.

51.     Weideman's complaint was detailed, and included claims that:

    a.     She had felt the sheet covering her breast move during the massage and believed that Deiter had pulled down the sheet in order to see her breasts;

    b.     During the massage, Deiter had leaned into her body and that she had felt an erection through his pants;

    c.     During the passage, Deiter had digitally penetrated her vagina.

52.     It was Spa Dogs' judgment at the time that Ms. Weideman's complaint had clear indicia of credibility, including but not limited to:

    a.     She did not expressly request that her membership be terminated, and her primary concern during the call appeared to be the prevention of future crimes against others;

    b.     She reported the incident approximately contemporaneously with its occurrence;

    c.     She gave clear details of what specific things Deiter had done that were improper; and

      d.      She appeared to be audibly upset during the call.

53.     As a result of this, Spa Dogs immediately suspended Deiter, and canceled his appointments for a period of one-month, pending investigation, likely to be followed by termination.

54.     On the same day, West Goshen Township police officers were dispatched to Spa Dogs, and reported that they were present to investigate a complaint against Deiter that had been filed by Ms. Weideman earlier that day.

55.     Spa Dogs reported the incident to Massage Envy in considerable detail the same day.  (Weideman Report, May 2, 2015, attached at Exhibit "D").

56.     Although the report included allegations of criminal sexual assault and police involvement, Massage Envy took no action to inquire as to the outcome of the investigation or Mr. Deiter's employment status.

57.     On May 26, 2016, Deiter entered a negotiated plea to three counts of Aggravated Indecent Assault and six counts of Indecent Assault.  He was sentenced to an aggregate term of imprisonment of 78-to-156 months, followed by a three-year period of probation.

### *The Lawsuits and the Notice of Default*

58.     On or about September 14, 2015, six of Deiter's sometime clients and colleagues, *viz.* Caroline Sandler, Lynda McQuinn, Amanda Devaney, Sylvia Angelini, Charlene James, and Susan Weideman filed civil suits against Spa Dogs and Massage Envy.

11

59.     Three additional sometime clients of Deiter's, *viz*. Dawn Chiofolo, Rosanne Stumpf, and Linda Miller, filed suit against Spa Dogs and Massage Envy thereafter.

60.     On June 24, 2016, nine months and ten days after suit was filed, Massage Envy served Spa Dogs with a Notice of Default.  (Attached at Exhibit "E").

61.     The Notice of Default alleged two separate incidents of default:

        a.      That the Hanrahan incident, discussed above, was not reported to Massage Envy; and

        b.      That the Chiofolo incident, discussed above, was not reported to Massage Envy.

62.     The Notice of Default alleges that these purported failures are violations of the Operations Manual's Code of Conduct regarding "Handling and Reporting" and is a violation of Section 8.J of the Franchise Agreement, "Compliance with System Standards."

63.     Massage Envy's claim that Spa Dogs failed to report the Hanrahan incident is false.  (*See*, Exhibit "B").  Spa Dogs promptly reported the Hanrahan incident.

64.     Indeed, during the course of discovery in the lawsuits discussed above, Massage Envy and its agents have produced documentation confirming that Spa Dogs made a timely report of the Hanrahan incident to its Regional Developer, and that that report was passed directly to Melanie Hansen, Massage Envy's general counsel.  (*See*, Exhibit "B").

65.     In spite of this false statement, the notice of default was signed by Melanie Hansen, who had personal knowledge of the falsity of the claim.

66.     The Notice of Default is—technically—correct that Spa Dogs failed to timely report the Chiofolo incident.  Importantly, however, Massage Envy had already been placed on notice of Deiter's earlier misconduct as a result of the Angelini incident, and had taken no action.

67.     The Notice of Default asked that Spa Dogs "immediately submit a report of each incident to us through the Automated Incident Reporting Tool."  (*See,* Exhibit "E").

68.     Accordingly, immediately upon receiving the Notice of Default, Spa Dogs reported the Chiofolo incident.  (Chiofolo Report, attached at Exhibit "F").

### The Notice of Right to Terminate

69.     On September 12, 2016, Massage Envy served Spa Dogs with a letter confusingly titled "Notice of Right to Terminate."  (Attached at Exhibit "G").

70.     The Notice of Right to Terminate include multiple material falsehoods that were known by Massage Envy to be false at the time the Notice was written, including but now limited to:

  a.     The Notice of Right to Terminate alleged that Spa Dogs had provided a "response" to the Notice of Default that "confirmed that the multiple incidents were either not properly reported to us or not reported to us at all."  In fact, Spa Dogs made no response to the Notice of Default, and, as noted above, certain of the defaults alleged therein did not occur.

13

b.      The Notice of Right to Terminate alleged that Spa Dogs' "failure to report these incidents to us denied us the opportunity of ensuring System Standards were appropriately followed at the time."  In fact, Spa Dogs did report the Hanrahan incident in its entirety, and placed Massage Envy on notice of the substance of the complaints against Deiter by reporting the Angelini incident in its entirety; Massage Envy took no action whatsoever with respect to either incident.

c.      Indeed, during the lawsuits described above, Donald McConnell, the Regional Developer for Massage Envy and a recipient of the Notice of Default testified that Massage Envy does not, and has never taken action when it receives reports of alleged misconduct.   Specifically, at his deposition, Mr. McConnell testified:

Q.      When an investigative report is sent to Massage Envy Franchising do you know what the purpose of sending that report is?

A.      It's to—it's to make corporate aware that an incident happened and when the report portal was set up it's also for data collection to see if there were any—if there's any issues or anything like that or any additional types of training that would be needed in our network to protect our—protect the brand, which is our members, guests, employees, et cetera.

Q.      Got it.  To your knowledge as a regional developer, has there been an instance where corporate took action on a franchisee level based on a report that it received through the portal?

. . .

A.      Not that I'm aware of.

14

Q.      Okay.  Is there anything that Massage Envy Franchising does with those reports, to your knowledge, other than, number one, collect them for statistical purposes, and number two, use them to—I am going to say enhance future training and maintenance?

. . .

A.      Not that I'm aware of.

(N.T. McConnell Dep., 256:15-260:7, attached at Exhibit "H").

d.      The Notice of Right to Terminate also alleges that the defaults "cannot be cured," which allegation is false.  To the contrary, the earlier Notice of Default specifically instructed Spa Dogs to cure the default by making a report, which Spa Dogs immediately did.  (*See,* Exhibits "F" and "G").

71.      Thus, Massage Envy's claim that it would have taken action but for the failure to report the Hanrahan and Chiofolo's incidents is pretextual: the Hanrahan incident *was* reported, Massage Envy was already on notice of a substantially identical report regarding Deiter and chose to take no action, and, in any event, Massage Envy maintains a policy not to interfere with its franchises' handling of reports.

72.      The Notice of Right to Terminate asserts that Massage Envy is permitted to terminate Spa Dogs' Franchise Agreement pursuant to Section 14.j of that document.

73.      Section 14 of the Franchise Agreement includes multiple bases on which Massage Envy is permitted to terminate the agreement.

a.      Section 14.a. of the Franchise Agreement is the most obviously applicable basis for termination, since the Notice of Default alleges a failure to

comply with System Standards, and Section 14.a provides for termination for failure to comply with System Standards.

b.      Section 14.a., however, includes a cure provision, and *only* permits termination if "you fail to comply with any mandatory System Standard ***and do not correct the failure within thirty (30) days after we deliver written notice of the failure to you.***"  (*See,* Exhibit "A" at 31).

c.      Spa Dogs cured its—purely technical—failure to comply with System Standards within thirty days after receiving the Notice of Default by formally reporting the Chiofolo incident.  (*See,* Exhibit "G").

d.      Section 14.j, by contrast permits termination only where a franchise engages in "any dishonest, unethical or illegal conduct or any other conduct which, in our opinion, adversely affects the CLINIC'S reputation, the reputation of other Massage Envy Clinics or the goodwill associated with the Marks[.]" (*See,* Exhibit "A" at 31).

e.      Unlike Section 14.a, Section 14.j includes no cure provision.

f.      Spa Dogs is not alleged to have engaged in dishonest, unethical, or illegal conduct, or conduct that adversely affected its reputation *other* than its purported failure to report the Hanrahan incident and its actual failure to immediately report the Chiofolo report.

g.      In any event, it is specifically denied that the alleged failure to report the Hanrahan incident (which was, in fact, reported) or the Chiofolo report (which failure was cured) resulted in any adverse effect on the clinic's

16

reputation or the brand's goodwill; if there was any material effect on either, it was self-evidently caused by the misconduct of the actual employee.

74.     It is a well-settled principal of contract interpretation that the specific language of a contract controls over the general; Massage Envy cannot assert that Spa Dogs' specific failure to comply with System Standards is not subject to cure under Section 14.a of the Franchise Agreement simply because it might, under a strained interpretation, also adversely affect the clinic's reputation generally speaking.

75.     Although Melanie Hansen was specifically aware of the falsity of the statements in the Notice of Right to Terminate discussed above, it nevertheless bears her signature.

### *The Notice of Termination*

76.     On March 24, 2017, Massage Envy served on Spa Dogs a Notice of Termination (Attached at Exhibit "I").

77.     The Notice of Termination makes false claims that are substantially identical to the Notice of Right to Terminate and, again, wrongly asserts that Massage Envy Franchising has a right to terminate under Section 14.j of the Franchise Agreement.

78.     The Notice of Termination demands that Spa Dogs cease operating "within thirty (30) days following delivery of this Notice" and confirm its cessation of business to Massage Envy.  (*See,* Exhibit "I").

79.     The Notice of Termination also purports to act as a self-executing purchase of all of Spa Dogs assets, including its computers, massage equipment, office equipment, and lease.

80.     Once again, in spite of her personal knowledge of the falsehood of many of the statements made in the Notice of Default and Notice of Right to Terminate, the Notice of Termination is again signed by Melanie Hansen.

81.     Based on the obvious falsehoods contained in the Notice of Default and the Notice of Right to Terminate, which were known to the author at the time it was written, it is believed, and therefore averred, that Massage Envy served the Notice of Intent to Terminate in order to distance itself from Spa Dogs during the litigation described above, and to create the appearance that it had a program and practice to supervise reports of complaints by clients when, in fact, no such program or practice exists.

*Spa Dogs' Harm*

82.     Spa Dogs will, self-evidently, suffer extreme harm if the Notice of Termination is given effect.

83.     Most immediately, it will cease to operate as a going concern, since the Franchise Agreement includes a non-compete clause; Spa Dogs will neither be able to operate as a Massage Envy franchise nor as an independent massage clinic.

84.     If Spa Dogs closes its doors during the duration of an eventual lawsuit and/or arbitration, it will likely be unable to reopen, even if successful, because its customers will have formed relationships with new spas in the area.

18

85.     The Franchise Agreement also includes an indemnification clause, which requires Spa Dogs and, arguably, its principal, Kate Diffenderfer, to pay the costs Massage Envy incurs during and as a result of the lawsuits described above; absent income from its daily operations, such indemnification will necessarily result in bankruptcy.

86.     The effect of the purported self-executing sale, moreover, deprives Spa Dogs of all of its tangible property, which have value as income generating assets, but have *de minimis* or no value for sale.

87.     Certain of Spa Dogs' assets are likely to be diminished significantly in value if moved, particularly fixtures built into the property; even if returned following Spa Dogs' success in a civil suit or arbitration, those items would be unusable.

88.     If Massage Envy takes over Spa Dogs' lease, moreover, which is expected to terminate in a matter of months, it is likely that Massage Envy will either sublet the space or allow the lease to lapse; once this happens, Spa Dogs will have no ability to continue its business in its present location, where it has an existing customer base.

89.     In short, if the Notice of Termination is given effect, Spa Dogs will be left with no means of generating income, no assets, and a steadily mounting debt to Massage Envy.

### PRELIMINARY INJUNCTION

90.     The purpose of a preliminary injunction is "to prevent irreparable injury or gross injustice by preserving the *status quo* as it exists or as it previously existed

before the acts complained of in the complaint." *Ambrogi v. Reber*, 932 A.2d 969, 974 (Pa. Super. 2007) *citing Anchel v. Shea*, 762 A.2d 346, 351 (Pa. Super. 2000).

91.     A plaintiff seeking an injunction must establish that: (1) relief is necessary to prevent immediate and irreparable harm; (2) a greater injury will occur from refusing the injunction than from granting it; (3) the injunction will restore the parties to the status quo; (4) the alleged wrong is manifest and the injunction is reasonably suited to abate it; and (5) the plaintiff's right to relief is clear.  *Id.* at 976.   A party seeking injunctive relief also must show that granting the request will not adversely affect the public interest. *Kessler v. Broder,* 851 A.2d 944, 947 (Pa. Super. 2004).

**A.     Immediate and Irreparable Harm.**

92.     For the reasons discussed above, Spa Dogs will suffer immediate and irreparable harm if relief is not granted, inasmuch as it will cease to operate as a going concern, and be unable to reopen, even following success in an arbitration or civil suit.

*93.*     Going out of business is an immediate and irreparable harm that cannot be compensated by an award of money damages.  *See, e.g., Hanover Assocs. v. Twp. of Hanover*, 707 A.2d 1178, 1182 (Pa. Commw. 1998) ("According to Appellees, violations of the contracts with PHFA and HUD's regulations would jeopardize Appellees' stream of income to such an extent that it could cause them to go out of business. Such a threat constitutes irreparable harm") (*citing, Three County Services Inc. v. Philadelphia Inquirer*, 486 A.2d 997 (Pa. Super. 1985)).

**B.    A greater injury will occur from refusing the injunction than from granting it.**

94.    As noted above, Spa Dogs will immediately cease to operate as a going concern if an injunction is not granted; Massage Envy, by contrast will ***not*** immediately cease to operate as a going concern if an injunction is granted.

95.    On the contrary, Massage Envy has been aware of the alleged defaults since long before it first issued the Notice of Default on June 24, 2016, and waited from that date until March 24, 2017 to serve the Notice of Termination.

96.    The defaults complained of by Massage Envy, moreover, are pretextual in nature; indeed, Massage Envy in general and Melanie Hansen in particular, is well aware that the true facts of the Hanrahan Incident, described above, do not support the allegations of default, and that the technical default regarding Dawn Chiofolo incident, described above, was cured.

97.    No new defaults have occurred since the defective Notice of Default was served.

98.    Massage Envy has suffered no harm as a result of the ongoing operation of Spa Dogs since the defective Notice of Default was mailed.

99.    Accordingly, greater harm will occur from refusing the injunction than from granting it.

**C.    The injunction will restore the parties to the *status quo.***

100.    At present, Spa Dogs operates as a Massage Envy Franchise.

21

101.    Massage Envy has changed the *status quo* by wrongly attempting to terminate Spa Dogs' franchise.

102.    If Massage Envy is permitted to wrongly change the *status quo*, Spa Dogs will cease to operate as a going concern.

103.    Granting an injunction will restore the parties to the *status quo*, and allow Spa Dogs to continue to operate as a Massage Envy Franchise.

**D.      The alleged wrong is manifest and Spa Dogs' right to relief is clear.**

104.    The Franchise Agreement sets forth the exclusive circumstances under which Massage Envy is entitled to terminate Spa Dogs' Franchise.

105.    The Franchise Agreement provides a cure period of thirty days for failures to comply with System Standards, including reporting client complaints.

106.    Massage Envy's claim that Spa Dogs failed to report the Hanrahan incident is false.

107.    Massage Envy's claim that Spa Dogs failed to report the Chiofolo incident is technically true, but Spa Dogs immediately cured that default as permitted by the Franchise Agreement.

108.    It is a well-settled principal of contract interpretation that the specific language of a contract controls over the general.  *Trombetta v. Raymond James Fin. Servs.*, 907 A.2d 550, 560 (Pa. Super. 2006); *see, also, Prof'l Flooring Co., Inc. v. Bushar Corp.*, 152 A.3d 292, 300 (Pa. Super. 2016).  As a result, Massage Envy cannot assert that Spa Dogs' specific failure to comply with System Standards is not subject to cure under Section

22

14.a of the Franchise Agreement simply because it might, under a strained interpretation, also adversely affect the clinic's reputation in general.

109.    In any event, Massage Envy is not permitted to terminate the Franchise Agreement pursuant to Section 14.j, because it has never given notice of any default other than the (false) Hanrahan default and the (cured) Chiofolo default, both of which it characterized as failures to comply with system standards under Section 14.a of the Franchise Agreement.

110.    Massage Envy's termination of the Franchise Agreement is a breach of the Franchise Agreement.

**E.    Granting a preliminary injunction will not adversely affect a public interest.**

111.    There is no reason to believe that granting the requested injunctive relief will adversely affect a public interest.

**F.    Temporary relief should be granted without hearing or notice.**

112.    Pa.R.Civ.P. 1531 authorizes this Court to grant an injunction without notice or a hearing where it "appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held."

113.    The Termination Notice purports to terminate Spa Dogs' franchise with Massage Envy *immediately*.

114.    It is impossible, therefore, to serve Massage Envy with a copy of original process in advance of the effective date of the purported termination.

115. This forces Spa Dogs' to either (a) comply with the Termination Notice, which will cause the immediate and irreparable harm discussed above; (b) defy the Termination Notice and risk a genuine default by doing so; or (c) seek an emergency injunction.

*WHEREFORE,* based on the foregoing, Petitioner, Spa Dogs LLC respectfully requests that this Court GRANT its Emergency Petition For Injunctive Relief and thereafter a permanent order for Injunctive Relief.

Respectfully submitted:

Date:  *April 6, 2017*       By:  _____

George C. Zumbano
John E. D. Larkin
*Attorneys for Spa Dogs, LLC*

24

*2017-03617-CT*

IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA

| | |
|---|---|
| SPA DOGS, LLC<br>350 East Biddle Street<br>West Chester, PA 19380<br>                    *Plaintiff,*<br><br>  v.<br><br>MASSAGE ENVY FRANCHISING, LLC<br>14350 North 87th Street<br>Suite 200<br>Scottsdale, AZ 85260<br>              *Defendant.* | IN THE COURT OF COMMON PLEAS<br>CHESTER COUNTY, PENNSYLVANIA<br><br><br>Declaratory Judgment Action<br><br><br><br>Case No: |

## **VERIFICATION**

I, Kate Diffenderfer, hereby state and depose that I am authorized to take this verification on behalf of plaintiff Spa Dogs, LLC, and verify that I am familiar with the facts set forth in the foregoing Petition and that, although the words are chosen by my counsel, the facts set forth therein are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

_____

Kate Diffenderfer

*2017-03617-CT*

IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA

SPA DOGS, LLC
350 East Biddle Street
West Chester, PA 19380

    *Plaintiff/Petitioner*
    v.

MASSAGE ENVY FRANCHISING, LLC
14350 North 87th Street
Suite 200
Scottsdale, AZ 85260

    *Defendant/Respondent.*

Case No: Case No: 2017-03617-CT



## ORDER

*AND NOW*, this _7th_ day of April, 2017, on consideration of Petitioner's Emergency Ex Parte Petition for Injunctive Relief, it appearing that immediate and irreparable harm may be sustained before notice and a hearing can be held, it is hereby ORDERED and DECREED that the petition is GRANTED as follows:

    1.    Respondent, Massage Envy Franchising, LLC, and its Officers, Employees and agents, are hereby ENJOINED from enforcing its Notice of Termination against Spa Dogs dated March 24, 2017, or from otherwise interfering or limiting Spa Dogs rights under its Franchise Agreement with Respondent, pending further order of court.

    2.    IT IS FURTER ORDERED THAT Petitioner is directed to file appropriate nominal security as permitted by Pa.R.C.P. 1531 in the amount of $ _1,000_, by the following date: April _10_, 2017.

CERTIFIED
FROM THE RECORD
ATTEST ~~~~~~
DEPUTY PROTHONOTARY
04/07/17

4.      IT IS FURTHER ORDERED THAT:

a. A Rule is issued upon Respondent to show cause why the Petitioner is not entitled to the relief requested.

b. Respondent shall file an Answer to the Petition on or before the _____ day of April, 2017.

c. A preliminary hearing on whether to continue, modify, or dissolve this Order is scheduled to be held on the _____ day of _____, 2017, in Courtroom _____ of the Chester County Justice Center, West Chester, Pa.   *To be determined*

d. A copy of this Order shall be provided to the Respondent, by Plaintiff.

By the Court:

M. Tunnell
_____
The Hon. Mark L. Tunnell, J.